**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>vs.<br><br>NICHOLAS GARROTT,<br><br>          Defendant. | 2:18-cr-00252-JCM-VCF<br><br>**REPORT AND RECOMMENDATION**<br><br>MOTION TO SUPPRESS [ECF NO. 43] |

Before the Court is Defendant Nicholas Garrott's Motion to Suppress Any and All Evidence Obtained by Warrantless Search of the Black Cadillac Bearing License Number KHD9643. (ECF No. 43). For the reasons discussed below, Defendant's motion should be denied.

**BACKGROUND**

In this case, Defendant is charged with conspiracy to distribute heroin, possession of a firearm and ammunition by a prohibited person, distribution of heroin, possession with intent to distribute heroin, possession with intent to distribute methamphetamine, and possession of a firearm in furtherance of a drug trafficking crime. (ECF No. 13). Drugs and a gun were found during a traffic stop of a rented car Defendant was driving. (ECF No. 44-1). Defendant was the only occupant when the car was stopped. (ECF No. 44). Defendant now moves to suppress all evidence found during the traffic stop: debit, credit, and bank cards; heroin, methamphetamine, and marijuana; cash; and a gun and ammunition. (ECF No. 43 at 5). Based on the motion's briefing and the testimony of FBI Special Agent Jace Prince and Henderson Police Officer Randy Dotson at an evidentiary hearing held on February 22, 2019, the facts in the case are as follows:

An FBI Taskforce, which included Las Vegas and North Las Vegas Metropolitan police officers, had been investigating Defendant since January of 2018. (ECF No. 48).[1] Through May of 2018, the FBI Taskforce set up several controlled purchases of firearms and drugs from Defendant. (*Id.*). The FBI Taskforce set up another controlled buy for June 7, 2018, where the Taskforce intended to solicit Defendant's cooperation with its investigation. (*Id.*). The FBI Taskforce obtained a pen register for Defendant's phone and received updates on his GPS location every 15 minutes, but the Taskforce did not have eyes on Defendant the morning of June 7, 2018. (*Id.*).

At approximately 12:46 on June 7, 2018, Henderson Officer Dotson tried to pull over Defendant for speeding more than 20 miles per hour over the speed limit. (ECF No. 48; Government Exhibit 2 admitted at the February 22, 2019 hearing). Defendant refused to pull over for several minutes, continuing to drive for more than a mile before pulling into a dead end street and stopping. (ECF No. 48; Government Exhibit 2). Once Defendant stopped, he was taken out of the car and put into handcuffs. (ECF No. 48). Officer Dotson's partner ran Defendant's name, and found he had warrants and no valid driver's license. (*Id.*). At that point, Officer Dotson placed Defendant under arrest for his traffic violations and lack of driver's license. (*Id.*). Officer Dotson testified that he had no idea Defendant was under investigation by the FBI Taskforce at the time the car was stopped and subjected to an inventory search. (*Id.*).

The officers conducted an inventory search of Defendant's car in anticipation of impounding it. (*Id.*). The officers found bags of heroin and methamphetamine in plain sight in an open "cubby" in the car's console in front of the gear shift. (*Id.*). Under those drugs was a gun. (*Id.*). In the back seat area, there was a closed backpack. (*Id.*). Officers searched inside the backpack and found marijuana. (*Id*).

Upon finding the drugs, gun, what appeared to be fake IDs, and a machine that could have been used to print IDs, officers informed their detective bureaus of their discovery. (*Id.*). Thereafter, the FBI Taskforce arrived at the scene. (*Id.*). Henderson Police Department yielded Defendant, the scene, and the

---

[1] ECF No. 48 is the Order setting the February 22, 2019 evidentiary hearing. The hearing was recorded.

investigation to the FBI Taskforce at approximately 1:55 pm.  (Government Exhibit 2).  Based on the evidence found by the Henderson officers, an FBI Taskforce officer obtained a search warrant for the car at approximately 2:12 pm.  (Government Exhibit 8 admitted at the February 22, 2019 hearing).  The FBI Taskforce did not find any new evidence at issue in this case after conducting a further search based on the warrant.  The FBI Taskforce took control of Defendant's vehicle to drive it back to the FBI office, though the car was later released to Defendant in connection with a controlled buy Defendant would play a part in on behalf of the FBI Taskforce.  (ECF No. 48).

## DISCUSSION

The Fourth Amendment protects the right of people to be secure against unreasonable searches and seizures.  Though the Fourth Amendment does not specifically preclude admission of evidence obtained in violation of its provisions, the courts enforce "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139-40 (2009).

"The government must prove the existence of an exception to the Fourth Amendment Warrant Requirement by a preponderance of the evidence." *United States v. Vasey*, 834 F.2d 782, 785 (9th Cir. 1987).  "[W]arrantless inventory searches of vehicles are lawful only if conducted pursuant to standard police procedures that are aimed at protecting the owner's property and at protecting the police from the owner charging them with having stolen, lost, or damaged his property." *United States v. Caseres*, 533 F.3d 1064, 1074 (9th Cir. 2008).  Inventory searches cannot be a "ruse for a general rummaging in order to discover incriminating evidence." *Fla. v. Wells*, 495 U.S. 1, 1 (1990).

The Henderson Police Department policy states that vehicles will be impounded incident to arrest, and police have a duty to inventory the contents of the vehicle protect the contents from loss and the officers from a claim of loss.  (ECF No. 44 at 5-6).  Henderson's policy also states that all locked containers will be inventoried "only if, the opening can be accomplished without damage."  (ECF No. 44 at 5).  "[A]

police department may require its officers to open closed containers discovered within vehicles." *United States v. Burgos*, 618 F. App'x 338, 339 (9th Cir. 2015); *see also Fla. v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635, 109 L. Ed. 2d 1 (1990) ("policies of opening all containers or of opening no containers are unquestionably permissible").

The Henderson officers conducted a valid inventory search of Defendant's car. The officers properly determined that Defendant could be arrested for his traffic violations and lack of driver's license. At the point of Defendant's arrest, the Henderson Police Department policy states that the officers had to inventory Defendant's car, including all locked containers that could be opened without damaging the container. The heroin, methamphetamine, and gun were in an open "cubby" area. The marijuana was in a closed backpack that the officers were able to open without damaging.

Defendant asserts that (1) the inventory search was staged by Henderson officers who were aware of the FBI Taskforce's investigation into Defendant and (2) the inventory search included breaking open and damaging locked compartments in the car. (ECF No. 45 at 3- 4). There is no evidence that the FBI Taskforce and Henderson officers conspired to stage Defendant's traffic stop. Officer Dotson testified credibly that Defendant was speeding and refusing to yield to the officers at the time of the traffic stop, and that Officer Dotson had no contact with the FBI Taskforce prior to pulling over Defendant. (ECF No. 48). There is also insufficient evidence that the officers broke into and damaged any compartments in Defendant's car. Though Defendant argues that certain photographs show that the glove compartment and trunk were broken into (Government Exhibits 4, 5 admitted at the February 22, 2019 hearing), the photographs do not contain any visible damage. Officer Dotson testified that he did not touch the glove compartment and his partner accessed the trunk by lowering the back seat. (ECF No. 48). Even assuming that the officers broke into the glove compartment or trunk, no evidence at issue in this case was seized from those areas. Officer Dotson testified that nothing was seized from the glove compartment, and the

only contraband discovered in the trunk was a machine that could have been used to print IDs. (*Id.*). The machine does not appear to be at issue in the charges currently brought against Defendant.

The Court notes that the Henderson officers did not complete the impound procedure for Defendant's car due to the FBI Taskforce's intervention. Courts may be "dubious of characterizing the search of a suspect's motor vehicle, after the fact, as an inventory search" when the impound process is not complete. *United States v. Dillard*, No. 2:09-cr-00057-RLH-GWF, 2010 WL 5764682, at *7 (D. Nev. Dec. 16, 2010), *report and recommendation adopted*, No. 2:09-cr-0057-RLH-GWF, 2011 WL 463034 (D. Nev. Feb. 3, 2011). However, the facts of this case clearly establish that the Henderson officers conducted an inventory search in good faith prior to the FBI Taskforce's involvement. If not for the unforeseen intervention of the FBI Taskforce, Defendant would have been arrested and his car would have been impounded by Henderson Police.

Because the Henderson officers conducted a valid inventory search of Defendant's car, the evidence seized from the car should not be suppressed.

ACCORDINGLY, and for good cause shown,

IT IS HEREBY Recommended that Defendant's Motion to Suppress Any and All Evidence Obtained by Warrantless Search of the Black Cadillac Bearing License Number KHD9643 (ECF No. 43). should be DENIED.

DATED this 26th day of February, 2019.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE